IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| CHRISTINE GIESLER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) Case No. 22-cv-03008 |
| v. | ) |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Commissioner of Social Security, | ) |
| Defendant. | ) |

OPINION

**COLLEEN R. LAWLESS, U.S. District Judge:**

This is an action under 42 U.S.C. § 405(g) for judicial review of the Administrative Law Judge's (ALJ) Decision denying Plaintiff Christine Giesler's claims for Disability Insurance Benefits ("DIB") under section 216(I) and 223(d) of the Social Security Act and Supplemental Security Income ("SSI") benefits under Section 1614(a)(3)(A) of the Social Security Act. Before the Court are Plaintiff's Motion for Summary Judgment (Doc. 15) and Defendant's Motion for Summary Affirmance. (Doc. 17).

I.    BACKGROUND

On October 23, 2019, Plaintiff filed an application for DIB and SSI under Titles II and XVI of the Social Security Act. (R. 544-62). In both applications, Plaintiff alleged disability beginning January 1, 2018, at which time Plaintiff was 40 years old. (R. 15, 29). On March 13, 2020, Defendant issued a Notice of Disapproved Claims denying benefits to Plaintiff. (R. 461-64). On March 19, 2020, Plaintiff filed a Request for Reconsideration (R. 465) which was denied on September 17, 2020. (R. 457-58). On April 22, 2021, a hearing

was held before an ALJ who found Plaintiff was not disabled and denied her application. (R. 12-36). The Appeals Council denied review in November 2021 (R. 1-7), making the ALJ's decision the agency's final decision. *See* 20 C.F.R. §§ 404.955 & 404.981. On January 28, 2022, as a result of the Appeals Council's denial, Plaintiff filed this action under 42 U.S.C. § 405(g). (Doc. 1).

## II.    LEGAL STANDARD

To determine whether a claimant is disabled, the ALJ conducts a five-step inquiry: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the claimant's impairment meets or equals any listed impairment; (4) whether the claimant is unable to perform his past relevant work; and (5) whether the claimant is unable to perform any other available work in light of his age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (internal citation omitted).

The court reviews the ALJ's decision deferentially to determine if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The court considers the ALJ's opinion as a whole, and the Seventh Circuit has said that it is a "needless formality to have the ALJ repeat substantially similar

factual analyses" at different sequential steps. *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004). Although the task of a court is not to reweigh evidence or substitute its judgment for that of the ALJ, the ALJ's decision "must provide enough discussion for [the Court] to afford [the Plaintiff] meaningful judicial review and assess the validity of the agency's ultimate conclusion." *Id.* at 856-57. A reviewing court does not "resolve conflicts or decide questions of credibility." *L.D.R. v. Berryhill*, 920 F.3d 1146, 1151 (7th Cir. 2019).

### III. ANALYSIS

At step one of his decision, the ALJ found Plaintiff had not engaged in substantial gainful employment since her alleged onset date. (R. 18). At step two, the ALJ determined Plaintiff suffered from multiple severe impairments: bipolar disorder, borderline personality disorder, depressive disorder, anxiety disorder, post-traumatic stress disorder, left shoulder dysfunction, cervical spine disorder, and obesity. (*Id.*). At step three, the ALJ ruled Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (*Id.*). Before turning to step four, the ALJ found that Plaintiff had the residual functional capacity (RFC) to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). (*Id.*). Specifically, the ALJ determined Plaintiff could perform the following:

> lift and/or carry/push and/or pull 20 pounds occasionally, 10 pounds frequently. The claimant can sit, with normal breaks, for a total of 6 hours per 8-hour workday, and stand and/or walk, with normal breaks, for a total of 6 hours per 8-hour workday. The claimant can occasionally climb ladders, ropes, or scaffolds. The claimant can occasionally stoop and crawl. The claimant can occasionally reach overhead and frequently reach in other directions with her left upper extremity. The claimant can tolerate occasional exposure to extreme cold, vibration, and pulmonary irritants such as fumes, dusts, gases, noxious odors. She could tolerate a moderate

noise intensity environment as defined in SCO. The claimant can understand, remember, and apply instructions to perform simple and detailed but not complex tasks. The claimant can make work decisions commensurate with those tasks. The claimant can concentrate to work at a consistent pace for two-hour periods before and after customary breaks in jobs that allow her to maintain a flexible goal-oriented pace not involving assembly line work. The claimant can tolerate occasional interactions with supervisors and coworkers in jobs that do not require tandem tasks. She can tolerate occasional interaction with the public in jobs that do not require sales, negotiation, customer service, or dispute resolution. The claimant can adapt to changes in a work environment with these limitations.

(R. 21-22). At step four, the ALJ determined that Plaintiff could not perform her past relevant work as an assistant manager. (R. 29). At step five, the ALJ ruled that considering Plaintiffs age, education, work experience, and RFC, there were jobs that existed in the national economy that Plaintiff could perform, including photocopy machine operator (48,000 jobs nationally), mail clerk (85,000 jobs nationally), and merchandise marker (2,000,000 jobs nationally). (R. 30).

Plaintiff argues the ALJ erred in that: (1) the opinion evidence was not properly evaluated at the hearing; (2) the ALJ failed to properly consider Plaintiff's subjective complaints; and (3) the RFC is not supported by substantial evidence. (Doc. 15 at 1).

1. **Opinion Evidence**

Plaintiff argues the ALJ improperly evaluated the state-agency psychologist's prior administrative medical findings and the opinion from treating provider Dr. Alam. (Doc. 15-1 at 3-6). In response, Defendant argues the ALJ's evaluation of the opinion evidence comported with the governing regulation requiring an ALJ to evaluate the persuasiveness of each medical opinion based on certain factors. (Doc. 17-1 at 5-8; *see also* 20 C.F.R. § 404.1520c).

20 C.F.R. § 416.920c(a) states that an ALJ "will not defer or give any specific evidentiary weight ... to any medical opinion(s) ... including those from [a claimant's] medical sources." He "is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians." *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007) (refuting the claimant's argument that "the ALJ erred by failing to adopt her [RFC] as determined by any of her physicians"). However, he must "articulate how [he] considered the medical opinions ... in [a claimant's] claim" according to certain criteria. 20 C.F.R. § 416.920c(a).

Specifically, an ALJ is required to evaluate the persuasiveness of each medical opinion based on certain factors: (1) supportability; (2) consistency; (3) the medical source's relationship with the claimant; (4) specialization; and (5) other factors, including the source's familiarity with other evidence in the claim or an understanding of Social Security disability policies and requirements. 20 C.F.R. § 404.1520c(c)(1)-(5)). An ALJ must explain how he considered the first two factors (supportability and consistency) and may, but is not required to, explain his consideration of the other factors. 20 C.F.R. § 404.1520c(b)(2). Supportability measures how much the objective medical evidence and supporting explanations presented by a medical source support the opinion. *Id.* § 404.1520c(c)(1). And consistency assesses how a medical opinion squares with other evidence in the record. *Id.* § 404.1520c(c)(2).

For instance, in *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004), the district court held that the ALJ adequately discussed the supportability and consistency of the plaintiff's medical provider in his decision. Specifically, the doctor wrote a letter to the

plaintiff's attorney stating that Skarbek "can walk for only short distances, less than one-half block .... he also has difficulty with lifting, he can lift only 5–10 pounds and then develops severe pain." *Skarbek*, 390 F.3d at 502. In that case, the ALJ stated that there were discrepancies between the recommended limitations and the objective medical evidence, so he did not give that physician controlling weight. *Id.* at 504. On appeal, the Seventh Circuit found that the inconsistencies undermined the weight of the physician's opinion and emphasized that "[a] treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if supported by the medical findings and consistent with substantial evidence in the record." *Id.* at 503.

Similarly, in *Loveless v. Colvin*, 810 F.3d 502, 507 (7th Cir. 2016), the court held that "the ALJ properly discounted [a physician's] medical opinion that rests entirely on the claimant's subjective complaints" rather than the objective medical evidence. In that case, the ALJ emphasized that the plaintiff's subjective complaints were "contradicted by the claimant's activities of daily living, his routine and conservative medical treatment since 2011, and many earlier reports of minimal or no pain." *Loveless*, 810 F.3d at 508. Thus, the ALJ properly discounted the physician's opinion due to a lack of supportability and consistency. *Id.* at 507.

In this case, psychologist Reta Webster and Dr. Alam opined that Plaintiff's mental impairments dramatically limited her ability to work and perform work duties and requirements. (R. 28). The ALJ did not find these opinions persuasive because Plaintiff's "mental status exams indicate that [Plaintiff] does not exhibit memory problems, has normal cognition, fair insight and judgment, average intelligence, and a normal thought

process." (*Id.*). The ALJ further considered how "treatment notes indicate that [Plaintiff] has improved her coping abilities with medication management and therapy and that her moods have improved." (*Id.*). Ultimately, the ALJ found the opinions of Ms. Webster and Dr. Alam neither consistent with the record nor supported by explanation. (*Id.*).

In contrast, however, the ALJ was persuaded by the opinion of the State Disability Determination Psychologist, Dr. Bolden. (*Id.*). Dr. Bolden opined:

> She is able to prepare simple meals, do chores, drive a car, travel alone, shop in stores/by phone, but has difficulty managing money (i.e. goes on shopping sprees). She socializes with family and friends, attends church and medical appointments; but acknowledges she has difficulty getting along with others.

(*Id.*; R. 431).

The ALJ was also persuaded by Dr. Bolden's finding that:

> The claimant is able to understand, remember or apply 1-3 step tasks with sustained concentration. However, she will have difficulty working in close proximity to others and with the public. She is able to appropriately respond to brief and superficial contact with coworkers and supervisors. She is able to appropriately respond [*sic*] routine changes in a work setting.

(*Id.*; 437). The ALJ considered Dr. Bolden's opinion persuasive as well as supported by objective evidence of Plaintiff's activities of daily living. (*Id.*).

Before making his ultimate conclusion, the ALJ went through a detailed analysis of the medical evidence both in the record and presented at the hearing. (R. 18-30). The ALJ found that although Plaintiff's mental status examinations contained mixed findings, they overall portrayed her as an individual capable of a range of unskilled work with social limitations. (R. 25-27). The ALJ considered Plaintiff's treatment notes from 2019, which showed her having normal thought processes and cognition, but with intense

mood swings, restlessness, anxiety, and depression. (R. 25-26, 877, 885, 894, 912-17, 921, 994-95, 1119, 1281-82). According to the 2019 records, her depression and anxiety were under control at certain points. (*Id.*)

Throughout 2020, Plaintiff continued to experience mental symptoms, but her examinations showed adequate hygiene and grooming, no abnormal psychomotor activity, cooperative behavior, good eye contact, and normal speech, but with a dysphoric mood and a serious and restricted affect. (R. 26, 1029, 1039, 1048-50, 1114). The Court will not reweigh the opinion evidence presented nor will it decide questions of credibility or substitute its judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Moreover, the Court will "reverse only if the record 'compels' a contrary result." *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (citations and quotations omitted). The record in this case by no means does so.

Notably, by December 2020, the evidence showed Plaintiff reported an increase in her ability to cope and felt better without side effects from any of her medications. (R. 27). The ALJ noted that during that time, Plaintiff was performing the following actions: (1) helping care for and babysit her infant niece; (2) engaging in her passion for hiking in the woods; and (3) lost 20 pounds by walking regularly. (*Id.*). The ALJ also explained that, upon a mental status examination, Plaintiff was normal, with euthymic mood, normal affect, average intelligence, and fair insight and judgment. (*Id.*).

After review of the record and the ALJ's Decision, the Court finds the ALJ reasonably found Dr. Bolden's prior administrative medical findings regarding Plaintiff's mental capabilities were consistent with the evidence of record. (R. 431-32, 435-37). In her

Motion for Summary Judgment, Plaintiff simply argues that the ALJ's decision "fails to discuss consistency and does not explain how the objective evidence supports the [medical consultant's] opinion and fails to explain how plaintiff's ADLs are consistent with the opinion from the [medical consultants] and inconsistent with her reports of subjective symptoms." (Doc 15-1 at 4). Plaintiff argues for reversal because the opinion of Dr. Alam is not consistent with the ALJ's finding. (*Id.*). Plaintiff is essentially requesting the Court to make its own credibility determinations and evidence-based conclusions to find that Dr. Alam's opinion holds more weight than the ALJ's conclusion. But that is improper, as that is the responsibility of the ALJ and the Court will not reweigh evidence or substitute its judgment in place of the ALJ. *Chavez v. Berryhill*, 895 F.3d 962, 968 (7th Cir. 2018).

Indeed, the central duties of an ALJ include weighing conflicting evidence, resolving debatable evidentiary conflicts, and determining credibility. *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022). The Seventh Circuit has held that "[w]hen treating and consulting physicians present conflicting evidence, the ALJ may decide whom to believe, so long as substantial evidence supports that decision." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001).

The ALJ reasonably found Dr. Alam's opinion that Plaintiff had marked limitations in every domain of mental functioning unpersuasive and not well-explained. (R. 28, 989-93). In so holding, the ALJ highlighted how Dr. Alam checked the boxes indicating the highest level of marked limitations for every one of Plaintiff's mental functions and, when prompted to explain the reasoning, Dr. Alam simply cited Plaintiff's

mental health diagnoses. (R. 989-93). The ALJ found this reasoning insufficient and unpersuasive, as a "mere diagnosis does not establish functional limitations, severe impairments, or an inability to work." *Allen v. Astrue*, No. 10 C 994, 2011 U.S. Dist. LEXIS 84884, at *35-36 (N.D. Ill. Aug. 1, 2011), (citing *Stamps v. Astrue*, 2010 U.S. Dist. LEXIS 131524, 2010 WL 5149284, *21 (N.D. Ill. 2010); *Anderson v. Sullivan*, 925 F.2d 220, 222 (7th Cir. 1991).

Indeed, in reading the ALJ's detailed reasoning, it is evident the ALJ considered the required factors of supportability and consistency. For instance, Dr. Alam opined that Plaintiff "is markedly limited in every domain of mental functioning." (R. 28). State-Agency Psychologist Webster opined that Plaintiff's mental impairments "…dramatically impact her ability to work and perform work duties and requirements, Due [*sic*] to the severity and frequency of her symptoms she is unable to work at this time." (*Id.*). However, Plaintiff's mental status exams indicate that she "does not exhibit memory problems, has normal cognition, fair insight and judgment, average intelligence, and a normal thought process." (*Id.*). In light of Plaintiff's mental status exams, the ALJ found the opinions of Dr. Alam and Ms. Webster neither consistent with the record nor supported by explanation. (*Id.*). Moreover, on the day Plaintiff requested Dr. Alam to complete her disability paperwork, Dr. Alam indicated in his treatment notes that Plaintiff was coping fairly well, although easily overwhelmed. (R. 27-28). Therefore, the ALJ reasonably found those treatment notes inconsistent with Dr. Alam's opinion that Plaintiff had marked limitations in every area. (*Id.*).

Finally, Plaintiff argues the ALJ should have considered her Global Assessment of Functioning ("GAF") scores. (Doc. 15-1 at 5-6). However, nowhere in Plaintiff's Motion does she provide any record citations showing her GAF scores, nor does she offer any explanation as to how her GAF scores show her to be more limited than what the ALJ found. *See Econ. Folding Box Corp. v. Anchor Frozen Foods Corp.*, 515 F.3d 718, 721 (7th Cir. 2008) (noting it is not the role of a reviewing court to develop arguments for a plaintiff and subsequently address the arguments the plaintiff could or should have made). Defendant correctly states that a GAF score "does not reflect the clinician's opinion of functional capacity [and, a]ccordingly, 'nowhere do the Social Security regulations or case law require an ALJ to determine the extent of an individual's disability based entirely on his GAF score.'" (Doc. 17-1 at 9); *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (citing *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002)).

Accordingly, in reading the ALJ's detailed reasoning, it is evident the ALJ properly evaluated the opinion evidence of the state-agency psychologist's prior administrative medical findings and the opinion from treating provider Dr. Alam. As such, the ALJ's determinations will not be reversed on this ground.

### 2. Subjective Complaints

Next, Plaintiff argues the ALJ failed to properly consider her subjective complaints of pain (Doc. 15-1 at 6-9) but does not identify any subjective complaints the ALJ allegedly failed to consider. (*See id.*). Rather, Plaintiff uses boilerplate language to support a general contention that the ALJ failed to consider her subjective complaints. (*See id.*). Specifically, Plaintiff states:

> The decision fails to identify any persuasive evidence which would lead to a conclusion the claimants [sic] symptoms, although possibly more limiting than the objective evidence suggests, are not genuine. The decision fails to explain how the evidence is inconsistent with plaintiff's subjective symptoms. The reasons given in the decision to conclude claimant's subjective symptoms are inconsistent with the evidence are not supported by substantial evidence of record.
>
> In light of the above, it cannot be said that the ALJ demonstrated in the written decision that all of the evidence relevant to claimant's complaints was considered or that the evidence considered so contradicted claimant's subjective complaints that the testimony could be discounted as not credible.

(Doc 15-1 at 8).

Plaintiff bears the burden of proving that she is disabled. *See* 20 C.F.R. § 404.1512(a); *Summers v. Berryhill*, 864 F.3d 523, 527 (7th Cir. 2017). She failed to meet that burden by citing to specific subjective complaints that the ALJ allegedly failed to consider in making his decision that Plaintiff did not have an impairment or combination of impairments that met or medically equals the severity of one of the listed impairments in 20 CFR § 404. (R. 18).

As courts have routinely held, it is neither the task of the Commissioner nor this Court to develop cogent arguments for Plaintiff and then address what Plaintiff should or might have argued. *see also Econ. Folding Box Corp.*, 515 F.3d at 721. The Court declines to speculate as to what subjective complaints Plaintiff seemingly argues the ALJ did not consider in his decision. In fact, a review of the record establishes that the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. (R. 23). As noted above, the ALJ found the opinions of Dr. Alam and

Psychologist Webster that Plaintiff "is markedly limited in every domain of mental functioning." (R. 28), inconsistent with Plaintiff's mental status exams which indicate that she "does not exhibit memory problems, has normal cognition, fair insight and judgment, average intelligence, and a normal thought process." (*Id.*). Therefore, Plaintiff's argument is affirmatively rebutted by the record.

### 3. Substantial Evidence

Plaintiff also argues, albeit very briefly, that while the ALJ's decision summarized the medical evidence, the ALJ "failed to provide an RFC based upon substantial evidence and did not provide explanation as to how the evidence supports those findings." (Doc. 15-1 at 3).

The Seventh Circuit has defined the RFC as "the claimant's ability to do physical and mental work activities on a regular and continuing basis despite limitations from her impairments." *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). "When determining the RFC, the ALJ must consider all medically determinable impairments, physical and mental, even those that are not considered 'severe.'" *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008). "The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments, including the impact of any related symptoms." SSR 96-8p. An ALJ's RFC assessment is proper when it builds a logical bridge from the evidence to the conclusions. *Moore*, 743 F.3d at 1121. Where ALJs have done so, the substantial evidence standard compels deference. *Biestek v. Berryhill*, 139 S. Ct. at 1151.

In this case, Plaintiff does not identify any evidence the ALJ allegedly overlooked, nor does she identify any additional functional limitations she believes the ALJ should have included in his RFC assessment. Plaintiff has failed to carry her burden of proving her disability by not identifying any objective evidence in the record supporting a blanket argument that the ALJ's RFC determination was not supported by substantial evidence.

Indeed, as Defendant identifies, the ALJ considered Plaintiff's allegations, her medical records, the medical source opinions, and prior administrative medical findings in determining Plaintiff's RFC. (R. 21-29). Despite Plaintiff's physical and mental impairments, the ALJ noted she had the RFC to perform a range of light work with occasional postural activities, left-arm reaching limitations, environmental restrictions, and mental, pace-related, and social limitations. (*Id.*). The ALJ also considered all of Plaintiff's relevant medical evidence records documenting her back, neck, and reaching problems, noting that Plaintiff exhibited normal gait, tone, and strength, with some tender points in her back, and range of motion limitations in her left upper body. (R. 23-24).

The record also establishes that the ALJ thoroughly considered Plaintiff's mental health records in determining her RFC. (R. 25-27). Specifically, Plaintiff's examinations showed normal thought processes and cognition, but also acknowledged documentation of anxiety, restlessness, issues with others, noise problems, mood swings, and panic attacks. (*Id.*). This assessment of the ALJ is consistent with the state-agency psychologist's prior administrative medical findings. (R. 28, 435-37). Having reached the RFC assessment, the ALJ determined Plaintiff was able to work jobs existing in the national

economy in significant numbers, including photocopy machine operator, mail clerk, and merchandise marker. (R. 30).

Accordingly, there is substantial evidence to support the ALJ's conclusion that Plaintiff did not have an impairment or combination of impairments that met or medically equals the severity of one of the listed impairments in 20 CFR § 404. (R. 18). The Court finds that the ALJ provided an accurate and logical bridge between the RFC and the evidence in making his conclusion. *Moore*, 743 F.3d at 1121.

## IV.   CONCLUSION

The Court has reviewed all of Plaintiff's arguments and concludes that the ALJ properly applied the law and supported his decision with substantial evidence. Plaintiff's Motion for Summary Judgment (Doc. 15) is **DENIED** and Defendant's Motion for Summary Affirmance (Doc. 17) is **GRANTED**. The Commissioner's decision denying benefits to Plaintiff Christine Giesler is AFFIRMED. The Clerk of the Court is directed to enter judgment in favor of the Defendant Commissioner and against Plaintiff Giesler.

ENTERED: September 11, 2023

COLLEEN R. LAWLESS
UNITED STATES DISTRICT JUDGE